E. M. SHEFFIELD, Appellee, v. HANCOCK COUNTY, IOWA, and A. W. BINGHAM, ANDREW ANDERSON, W. G. GREEN, O. A. PHELPS, JOHN T. BUSH, MEMBERS OF THE BOARD OF SUPERVISORS OF HANCOCK COUNTY, IOWA, Appellant.

Conveyances: CONSIDERATION: SPECIFIC PERFORMANCE. Where a board
1    of county supervisors and a purchaser from the county of a lake bed both thought that the county had some interest therein, although the extent of the interest was admittedly doubtful, and both knew it was questionable if the purchaser could perfect title after conveyance by the county, a contract for a quit claim deed upon a valuable consideration was enforceable; and the county could not defeat specific performance even though it had no right or title to convey.

Specific performance: TENDER: SUFFICIENCY. In this action for specific performance plaintiff tendered a draft to the county auditor, which he refused, but upon request of plaintiff the auditor held the same until the meeting of the board, which was after the time for performance, when it was returned to plaintiff and he receipted for it. *Held*, that there was sufficient compliance with the contract to support the action.

*Appeal from Hancock District Court.*—HON. J. F. CLYDE, Judge.

TUESDAY, MARCH 24, 1914.

ACTION for specific performance of a contract to quit-claim interest in certain real estate. From a decree for plaintiff, the defendant appeals.—*Affirmed.*

*C. R. Wood,* for appellant.

*Birdsall & Birdsall,* for appellee.

WITHROW, J.—I. On June 5, 1900, the board of supervisors of Hancock County passed a resolution authorizing and directing the chairman of the board and the county auditor to enter into a contract of sale with the plaintiff for the two hundred and ten acres comprising what was known as Twin Lake, in said county, for $1,050, to be paid $210 cash, with contract, and $840 on or before five years, and agreed to give a deed conveying the rights of said county in and to said lake. This action was taken in pursuance of proceedings had at the previous April session of the board of supervisors. The final resolution passed on June 5th is as follows:

Be it resolved, by the board of supervisors of Hancock county, Iowa, that, whereas, the sale of East Twin Lake to E. M. Sheffield, ordered at the April session of the board, at $5.00 per acre, $1.00 per acre cash and $4.00 per acre to be paid on or before five (5) years, has been partially carried out by Mr. Sheffield's paying to the chairman of this board

the cash payment of $210.00, for which he holds the chairman's receipt, therefore, be it resolved, that said sale be completed, and the contract therefore this day submitted to the board is hereby approved, and the chairman of this board and the county auditor are hereby instructed to make the said contract a part of the record of this meeting. Vote on the above resolution was called by the chairman with result as follows: G. Carlson, R. M. Day, and E. P. Fox, voting, 'Aye,' C. W. Richards and F. J. Oxley, voting, 'No.'— Motion was declared carried.

The contract provided that $210 or $1 per acre was to be paid upon the execution and delivery of the contract, and acknowledged receipt of that amount, and that the further and final payment of $840 should be paid within five years from the date of the contract. The terms of the contract, as bearing upon the interest to be conveyed, and the rights of the respective parties under the conveyance, were as follows:

This agreement, made and entered into on this 5th day of June, A. D. 1900, by and between Hancock county, Iowa, of the first part, and E. M. Sheffield, of Belmond, Wright county, Iowa, of the second part, witnesseth: That, in consideration of the covenants hereinafter mentioned to be performed by the second party, the first party hereto agrees to convey by properly executed quitclaim deed, or deeds to the second party, E. M. Sheffield, or to the person or persons who may be named or designated by the second party, to receive such deed or deeds, the entire interest of the first party in and to the real estate or tracts of land and water commonly known as 'East Twin Lake' and located in sections 19, 20, 29, and 30, of Twin Lakes township, Hancock county, Iowa, and containing two hundred and ten acres, more or less, as may be shown by the government survey of the same, being all that part within the meandered lines of the said lake, and the first party agrees to do whatever may be possible or necessary for them to do in the way of executing papers, to convey whatever interest the said first party has in said land to the said second party, or to the person or persons designated by him, but it is understood that the first party in no manner guarantees that any title now rests in

the said Hancock county, to said real estate or tract of land and water, and that first party in no manner agrees to be to any expense to obtain title to the said tract of land and water, either in second party or in first party or in second party's assigns; and it is further understood and agreed that all litigation that may arise in connection with the said real estate or tract of land and water, and expense thereof shall be borne by second party or his assigns, and it shall not be necessary for the first party to make any appearance in any such litigation, excepting at the expense of the said second party or his assigns.

The plaintiff pleads that he made the payments in accordance with the terms of the contract, the last payment having been made on June 5, 1905, and that immediately after his purchase he took actual possession of the property, and has since and at all times been in possession. He pleads a refusal on the part of the defendant to make the conveyance, and asks decree for specific performance of the contract. For answer the defendant pleads a general denial, and also that the board of supervisors had no legal right to enter into the contract, and that the contract sued upon is illegal and void, and that the auditor had no authority to receive or receipt for any money paid for or on account of the contract. The cause was tried upon these issues, resulting in a decree as prayed, from which the defendant appeals.

II. The principal question presented in the case is that relating to the authority of the board of supervisors to enter into the contract, it being claimed that Hancock county had no title or interest in the land and water embraced within its terms, and, being thus without any right, it had no power to enter into any agreement which would affect the rights of the actual owner. The right to enter into such a contract and be bound by it is challenged on no other grounds. It is the particular claim of the appellant that at the time the contract was made the title to the property was in the state, and the county was without any interest which would be subject to contract or

1. CONVEYANCES: consideration: specific performance.

conveyance by it.   If there was no title or right at that time held by it which would be the proper subject of a contract to convey title, and which was known to the parties, a decree for specific performance could not be granted.   *Ormsby v. Graham*, 123 Iowa, 202.   But that is not the question presented by this record.   The contract between the parties was, as gathered from its terms, with the express knowledge of both, that the county did not claim to own or assume to convey other than the bare rights covered by a quitclaim, and definitely excluded all conditions of warranty, claim of right, or liability for failure of title; and the purchaser expressly assumed the burden of all such claims, obligations, or litigation as might thereafter arise.   The contract in question was made in 1900, and covered that which was termed in the instrument as being commonly known as East Twin Lake. What may have been the interest of the county in the property is not shown by the proof.   That the board of supervisors then believed that there was some interest held by the county, and that the appellant shared in that belief, cannot be questioned under this record.   Both dealt with the subject, however, in such manner as to indicate that the extent of that interest was uncertain, and might be defeated, but such afforded a sufficient basis for a contract.   On the part of the purchaser there was moving to him a benefit or right contingent upon his ability to establish his title to the property, admittedly doubtful, but constituting a good consideration. 9 Cyc. 312.   On the part of the county was the evident claim of an ownership which was valuable, but which might be subject to litigation, and for the consideration named it agreed to part with that right.   We think the contract was an enforceable one, by either party, and therefore, one under which the appellee is entitled to have settled his rights, whatever they may be, if he has done the things required of him to entitle him to specific performance.

III.   The appellant claims that the appellee did not make the payments within the time fixed by the terms of the

contract, and also that the payments alleged to have been made or tendered were not to persons author-ized to receive them. The first payment of $210 was made to the chairman of the board of supervisors, and was acknowledged by the county in the resolution of the board authorizing the contract and sale. Later the county attorney sent to Sheffield, the appellee, a draft for $210, in an attempt to return that payment, which was refused by Sheffield and returned to the sender. In the spring of 1905, and before the expiration of the period fixed by the contract for final payment, the appellee sent to the county auditor a draft for $840, the final payment, which the latter refused to accept; but upon request of Sheffield it was held by the auditor until the meeting of the board, and was then returned to him, receipt being taken from Sheffield. No claim was made at the time other than the want of authority in the county to convey.

2. SPECIFIC PER-
FORMANCE: ten-
der: sufficiency.

It is suggested in argument by the return of the $210 payment there was a denial by the board of supervisors that appellee had any rights under the contract. This may be conceded, but a denial of the right would not destroy it, if it had actually arisen; and, as we have concluded in the previous division of this opinion that there was an enforceable con-tract, the attempt of one of the parties to it to thereafter repudiate or deny it would not affect the rights of the other.

The subsequent offer to pay the balance due on the con-tract by the delivery of a certified check in June, 1905, which was not objected to as not being money, but was returned to Sheffield in September by the county auditor after the board had met, was a sufficient compliance by the purchaser with the terms of the contract; and his demand for execution of the quitclaim deed, which was refused, entitle him to main-tain this action, and to a decree requiring the execution of the quitclaim deed. Such was the finding of the trial court, and its decree is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.